**Yitzchak Zelman, Esq.**
**California Bar Number: 350053**
**MARCUS & ZELMAN, LLC**
**701 Cookman Avenue, Suite 300**
**Asbury Park, NJ 07712**
**Tel: (732) 695-3282**
**Fax: (732) 298-6256**
**yzelman@marcuszelman.com**
**Attorney for Plaintiff**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

|  |  |
|---|---|
| **CARLA FLANNERY, on behalf of herself and all others similarly situated,**<br><br>                            Plaintiff,<br><br><br><br>-against-<br><br><br><br><br><br>**AMERICAN EXPRESS COMPANY,**<br><br>                            Defendant. | Civil Case No.:<br><br>**<u>CIVIL ACTION</u>**<br><br>**CLASS ACTION COMPLAINT**<br><br>(1) Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681q;<br>(2) Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(f);<br>(3) Violations of Cal. Civ. Code § 1785.19;<br>(4) Violations of Cal. Civ. Code § 1785.31;<br>(5) Violations of the California Unfair Competition Law (Business and Professional Code § 17200, et seq.)<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Carla Flannery (hereinafter "Plaintiff"), on behalf of herself and all others similarly situated, files this Class Action Complaint against Defendant American Express Company, (hereinafter "American Express" or "Defendant"). Plaintiff alleges, based on personal knowledge as to Defendant's actions and upon information and belief as to all other matters, as follows:

## **INTRODUCTION**

1.     This consumer class action is brought under the federal Fair Credit Reporting Act ("FCRA"), the California Consumer Credit Reporting Agencies Act ("CCRAA"), and the California Unfair Competition Law ("UCL") against a lender who routinely procures credit reports without a permissible purpose and under false pretenses.

2.     Specifically, American Express falsely represents to prospective customers that it will only do a soft inquiry into the prospective customer's credit, and will not do a hard inquiry unless the prospective customer's credit application is approved and the offered product is accepted. American Express further represents that the inquiry American Express will do will not affect the prospective borrower's credit score. In reality, American Express does a hard credit pull that adversely affects the potential borrower's credit score, even when the prospective customer's credit application is denied.

3.   American Express's misleading conduct violates federal and California law.

4.   As Defendant's misleading and illegal practices are routine and systematic, Plaintiff asserts claims for actual, statutory and punitive damages, as well as equitable relief.

## PARTIES

5.   Plaintiff is a "consumer" as protected and governed by the FCRA, and resides in Los Angeles, California.

6.   Defendant American Express is a corporation incorporated in the State of New York, with its principal offices located at 200 Vesey Street, New York, NY 10285.

## JURISDICTION AND VENUE

7.   The Court has federal question jurisdiction under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331, and further possesses supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.   Jurisdiction is also proper pursuant to 28 U.S.C. § 1332(d)(2) as at least one member of the putative class and Defendant are citizens of different states and the amount in controversy exceeds $5,000,000.

9.    Venue is proper in this Court because Defendant regularly does business in this District and a substantial part of the events or omissions giving rise to this claim occurred in this District.

## THE FCRA'S PRIVACY PROTECTIONS

10.    Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.

11.    In order to protect consumer privacy, the FCRA prohibits users from obtaining consumer reports unless the user has a permissible purpose for procuring the report, as defined in the statute.  Specifically, the FCRA, 15 U.S.C. § 1681b(f),  provides:

> A person shall not use or obtain a consumer report for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

12.    The FCRA also prohibits users from obtaining "information on a consumer from a consumer reporting agency under false pretenses." 15 U.S.C. § 1681q.

13.    Similarly, the CCRAA prohibits users who lack a permissible purpose from "knowingly and willfully obtain[ing] access to a file" or "knowingly and willfully obtain[ing] data from a file." Cal. Civil Code § 1785.19. The statute also

prevents credit reports from being obtained under false pretenses. Cal. Civil Code § 1785.31(a)(3).

14.    One permissible purpose for obtaining a credit report is for use in connection with a credit transaction involving a consumer. See 15 U.S.C. § 1681a(3)(A).

15.    However, in order to balance consumer privacy against the public interest in creditors being able to make intelligent offers to extend credit, the FCRA differentiates between credit reports that are obtained for the purpose of being used in a credit transaction that was initiated by the consumer and credit reports that are obtained for the purpose of being used in a credit transaction where the credit transaction was not initiated by the consumer.

16.    One example of a situation where an entity might procure a credit report in connection with a credit transaction not initiated by the consumer is in a situation where the entity procuring the report intends to make a firm offer of credit to the consumer. See 15 U.S.C. § 1681b(c)(1)(B).

17.    In all circumstances relating to reports procured in connection with credit transactions, if the consumer has neither initiated a transaction nor authorized the provision of a full report, the entity procuring the report can see only limited information about the consumer. See 15 U.S.C. §§ 1681b(a)(3)(A) and 1681b(c).

18.     Specifically, pursuant to § 1681b(c) a user of consumer reports who is pulling a report for the purpose of using the information in "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer" in a situation where no transaction was initiated may not procure an entire credit report.

19.     Rather, such an entity may only receive the following information:

> (A) the name and address of a consumer;
> (B) an identifier that is not unique to the consumer and that is used by the person solely for the purpose of verifying the identity of the consumer; and
> (C) other information pertaining to a consumer that does not identify the relationship or experience of the consumer with respect to a particular creditor or other entity

15 U.S.C. § 1681b(c)(2).

20.     Moreover, the inquiries from entities in circumstances where the consumer neither initiated the transaction nor provided consent for a full report to be procured cannot adversely affect a consumer's credit score or impact the consumer's ability to procure future credit, because such inquiries are viewable only by the consumer. See 15 U.S.C. § 1681b(c)(3) ("a consumer reporting agency shall not furnish to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer.").

## RECEIVING GENERAL INFORMATION ABOUT PRICES AND PRODUCTS IS NOT INITIATING A TRANSACTION

21.    It is well established that merely inquiring about the possibility of a future transaction, or shopping for rates, is insufficient to satisfy the requirement of the FCRA for a creditor to initiate the kind of full credit inquiry that is allowed when a consumer has initiated a transaction.

22.    Over fifteen years ago, the FTC opined that a customer who "'comes to an automobile dealership and requests information' from a salesman about one or more automobiles" had not initiated a transaction sufficient to allow the dealership to pull a credit report. FTC Letter to Coffey (Feb. 11, 1998), available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-coffey-02-11-98 (last visited May 10, 2023).

23.    The FTC reasoned that more than a mere inquiry, or "shopping" behavior, was required for a transaction to have been initiated. Specifically, the FTC stated that "a request for general information about products and prices offered does not involve a business transaction initiated by the consumer." *Id*.

24.    Instead, the FTC opined that a user "may obtain a [consumer] report only in those circumstances in which the consumer clearly understands that he or she is initiating the purchase or lease of a vehicle and the seller has a legitimate

business need for the consumer report information in order to complete the transaction." *Id.*

25.    The FTC continued: "Only in those circumstances where it is clear both to the consumer and to the dealer that the consumer is actually initiating the purchase or lease of a specific vehicle and, in addition, the dealer has a legitimate business need for consumer report information may the dealer obtain a report without written permission." *Id.*

## HARD AND SOFT CREDIT PULLS

26.    Colloquially speaking, inquiries related to those transactions initiated by the consumer are known as "hard inquiries" or "hard pulls." Inquiries not related to transactions initiated by the consumer are known as "soft inquiries" or "soft pulls."

27.    Hard pulls are visible to third parties who obtain a consumer credit report.

28.    Each hard pull can result in a reduction of a credit score by five points or more.

29.    Creditors often use the number of hard inquiries on a consumer's credit report as a basis to deny an extension of credit.

30.    A "soft pull," by contrast, is a credit inquiry that is not visible to anyone other than the consumer, and which does not affect the consumer's credit

score. Soft inquiries include inquiries made when a consumer checks his or her own credit report, inquiries made by businesses with which the consumer already does business, such as a mortgage servicer reviewing the status of the consumer's account and, as discussed above, and inquiries made by credit card companies or insurance companies to make firm offers of credit even when no *transaction* has been *initiated* by a consumer. "Credit Report Q&A" https://www.myfico.com/credit-education/credit-reports/credit-checks-and-inquiries (last visited May 10, 2023).

31.  A soft pull inquiry is not visible to other users and does not affect a consumer's credit score. *See* "Hard and Soft Credit Inquiries, and How One Hurts Your Credit Score." (Dec. 6, 2008) http://consumerist.com/2008/12/06/hard-and-soft-credit-inquiries-and-how-one-hurts-your-credit-score/ (last visited May 10, 2023).

32.  As described in further detail below, Defendant encouraged potential customers like Plaintiff to see if they would qualify for the Defendant's offerings without any inquiry or impact to their credit or their credit scores.

33.  In order to encourage such shopping behavior, Defendant represented that consumers could find out if they would be approved for a credit card without any impact to the consumers credit score.

34.     Deceitfully, and in direct contradiction to its own representations, however, Defendant did a hard pull, viewing more data than it was allowed to view under the law, viewing more data than it told Plaintiff it would view, and, in the process, negatively affecting Plaintiff's credit score and ability to access future credit.

## DEFENDANT'S REPRESENTATIONS ABOUT ITS CREDIT APPLICATION PROCESS

35.     American Express decided to embark on a new campaign to drum up business, telling consumers consumers "New: Apply With Confidence.  Know If You're Approved With No Impact To Your Credit Score."  American Express explains this process on its website, explaining that "After you submit you're application, we'll let you know if you're approved first – without any impact to your credit score."  *See e.g.,* *https://www.americanexpress.com/us/credit-cards/card-application/apply/blue-cash-everyday-credit-card/28009-10-0#/,*  last visited on September 19, 2023.

36.     At all times relevant to this action, American Express thus has affirmatively represented to prospective borrowers that American Express will not perform a hard credit pull that will affect the prospective borrower's credit score before the potential borrower can first know if they would be approved or not.

37.     American Express thus markets itself in part based on the fact that it allows potential borrowers to see if they are eligible for a credit card without completing a full hard pull credit inquiry.

38.     In a news release posted on its website, American Express states that "We know that consumers value transparency and certainty" and that "With our new application experience, prospective Card Members can apply for a specific Card — and know if they are approved — without having to worry about whether their application will change their credit score until they accept the Card. We hope this new, more transparent application experience encourages anyone with an interest in American Express membership to apply." https://about.americanexpress.com/newsroom/press-releases/news-details/2022/Find-Out-if-You-Are-Approved-for-an-American-Express-Personal-Card-Before-Impacting-Your-Credit-Score/default.aspx   (last visited September 19, 2023).

39.     American Express claims that it will only perform a hard credit after the potential customer has been confirmed as approved and elects to accept the offered card: "Consumers who are interested in applying for a U.S. Personal American Express Card can visit AmericanExpress.com/us/credit-card to see Card offers. Upon applying for a chosen Card, a soft inquiry will be made on an applicant's credit report and applicants will be told with 100% certainty if they are

approved – without any impact to their credit score. **If** the approved applicant then **accepts** the Card, a hard inquiry will be made on their credit report, which may impact their credit score." *See id.*

40.     Despite its representations that it will only do a hard pull if a customer is approved for the credit card and only after the customer agrees to accept the card, in order to gain as much information about consumers as possible, American Express actually does a hard pull full credit inquiry before any application has been made.

41.     American Express thus does a full credit inquiry without the consumer's consent, because, at most, the consumer has only consented to a soft pull inquiry, which will not affect the consumer's credit score.

42.     American Express further lacks a legitimate business purpose for performing a full credit inquiry, because it affirmatively represented to consumers that they could ascertain their eligibility without a hard credit pull, and that American Express would only perform a hard credit pull if the consumer actually qualified for the credit card and elected to accept it.

43.     In adopting these practices, American Express obtains more information than it told the consumer it would obtain, thereby falsely inducing consumers to provide American Express with the personally identifying information American Express needed in order to do the pull in the first instance.

44.     In putting its business interests ahead of consumers' rights to privacy and to protect their credit scores, American Express thus breaks the law and violates the rights of consumers.

## PLAINTIFF FLANNERY'S EXPERIENCE WITH DEFENDANT

45.     In September of 2022, Plaintiff began to shop around for a suitable credit card.

46.     Plaintiff then came across American Express "Apply With Confidence" program and elected to see if she would be qualified for an American Express card with no impact to her credit score.

47.     On or around September 22, 2022, Plaintiff filled in the information requested by American Express.

48.     On or about September 30, 2022, Plaintiff then received a letter from American Express, telling her that she was being denied the requested credit card based on information American Express had obtained from Experian.

49.     Plaintiff was then shocked, annoyed and frustrated to find out that American Express was now reporting a September 22, 2022 hard inquiry on her Experian and Transunion credit reports, which lowered her credit scores, in direct contravention of American Express's assurances.

50.     On September 27, 2022, Plaintiff then filed a complaint with the CFPB regarding this issue.

51.     On October 12, 2022, American Express then wrote a letter to the Plaintiff, which admitted that "We received your online application for the Blue Cash Everyday® Card on September 30, 2022[1] and determined that this application was submitted via the 'No credit score impact until applicant accepts' journey" and that "We found in our review that an inquiry was generated when you submitted the application. Rest assured feedback was issued to the appropriate team, and we have taken the necessary steps to suppress the inquiry related to this application from your credit report."

52.     However, this saga did not end there **because this inquiry was never removed**, as American Express promised it would  Instead, as of Plaintiff's recent August 2023 credit reports from both Experian and Transunion, that inquiry still remains.

53.     In an effort to get this inquiry off of her credit reports, Plaintiff then submitted four separate credit disputes to the credit bureaus (Experian and Transunion), all to no avail.  Instead, this inquiry continues to remain on the Plaintiff's credit reports.

54.     To this date, American Express has refused to remove the hard inquiry from Plaintiff's credit reports.

---

[1] As stated above, the application was submitted on September 22, 202 – the date the inquiry appears on the Plaintiff's credit reports.  This September 30, 2022 date is an apparent error, and appears correlated to the date that American Express issued the credit denial letter.

55.     American Express continues to misleadingly represent to customers that they are able to shop for rates without impacting their credit.

56.     Plaintiff's credit score has decreased as a result of American Express's unauthorized hard inquiry into Plaintiff's credit.

57.     Plaintiff has refrained from applying for other loans and rates because she is concerned that those lenders will see her reduced credit score.

58.     Plaintiff has suffered emotional distress as a result of American Express's unauthorized and deceitful hard inquiry and the continued effect of American Express's hard pull on her credit score is a constant source of stress, worry, and frustration for Plaintiff.

## DEFENDANT'S CONDUCT WAS WILLFUL

59.     Defendant acted knowingly and willfully.

60.     The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant.

61.     Defendant violated a clear statutory mandate set forth in 15 U.S.C § 1681q and 1681b.

62.     Defendant knew the difference between a hard credit inquiry and a soft credit inquiry, and knew that a hard pull would require express consent from Plaintiff.

63.     Defendant knew that a hard credit inquiry reduces a consumer's credit score and that consumers would be hesitant to apply for a credit card on Defendant's website if the consumers believed taking such a step might lead to a hard inquiry and thereby affect their credit scores.

64.     Defendant and/or its agents falsely represented to prospective customers that it would not do a hard inquiry in order to induce such prospective customers to begin the application process.

65.     In sharp contrast to the kind of clearly initiated transaction described by the FTC in *Coffey* described above, American Express's business model is intentionally designed to mislead the consumer about what American Express will do in response to the customer seeing if they qualified for an American Express credit card.

66.     Defendant knows that a hard credit pull will decrease a borrower's credit score.

67.     Defendant also knows, however, that consumers are very concerned about protecting their credit scores, and therefore entices consumers to apply for credit products by falsely representing that the borrower can explore their eligibility without authorizing a hard credit pull.

68.     Yet, without respect to its representations, American Express pulls full hard credit reports on consumers who choose only to see if they would qualify for

a credit card, but do not qualify or who do not accept American Express's offered product.

69.    Despite the pellucid statutory text and there being a depth of guidance, Defendant systematically procured consumer information without consent and under the false pretense that it would not affect consumers' credit scores.

70.    By adopting such a policy of making such misleading representations, Defendant voluntarily ran the risk of violating the law substantially greater than any risk associated with a statutory reading that was merely careless.

71.    By making hard inquiries into the credit reports of Plaintiff and the class members without consent, Defendant has damaged these borrowers' credit scores and creditworthiness.

## CLASS ACTION ALLEGATIONS

72.    Plaintiff asserts her claims individually and behalf of all others similarly situated under Fed. R. Civ. P. Rule 23(b)(3) as follows:

> All individuals on whom (a) Defendant made a hard credit inquiry in the two years predating the filing of this complaint and continuing through the date of class certification, (b) where Defendant's records reflect that the individual applied for an American Express product via a "No credit score impact until applicant accepts journey", and (c) where the individual was not subsequently approved for an American Express product, or did not accept the American Express product that was offered after their application.

73.     Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

74.     Specifically excluded from the Class are: (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; and (c) Defendant's employees, officers, directors, agents, and representatives and their family members.

75.     **Numerosity**:     The Classes are so numerous that joinder of all class members is impracticable. Defendant is one of the nation's largest providers of mortgage financing and has done hard credit pulls on thousands of consumers falling within the class definitions.

76.     **Typicality**:  Plaintiff's claims are typical of the class members' claims. The FCRA, CCRAA, and UCL violations committed by Defendant were committed pursuant to uniform policies and procedures, and Defendant treated Plaintiff in the same manner as other class members in accordance with its standard policies and practices.

77.     **Adequacy**: Plaintiff will fairly and adequately protect the interests of the Class, and has retained counsel experienced in complex class action litigation.

78.     Commonality: Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Class, including without limitation:

a. Whether Defendant procured credit reports under false pretenses;

b. Whether Defendant procured credit reports without a permissible purpose under the FCRA;

c. Whether Defendant's conduct was willful under the FCRA;

d. Whether Defendant accessed or obtained data from consumer files in violation of the CCRAA;

e. Whether Defendant's conduct was unlawful, unfair, or fraudulent under the UCL;

f. The appropriateness and proper measure of statutory damages; and

g. The appropriate scope of injunctive relief.

79. This case is further maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendant acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class a whole.

80. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication

of this litigation.  Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA and the CCRAA. Members of the Class do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendant by any members of the Class on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

## CAUSES OF ACTION
### COUNT I: 15 U.S.C. §1681q
### Obtaining Consumer Information Under False Pretenses

81.    Plaintiff repeats and realleges all preceding paragraphs.

82.    Plaintiff brings this claim individually and on behalf of the Class.

83.    Defendant represented to Plaintiff and the Class that it would not perform a hard inquiry into Plaintiff and the Class members' credit, unless the application was approved and the applicant elected to accept the offered American

Express product. Defendant further represented that the inquiry it would do would not affect the Class members' credit scores. These representations were false.

84.     Defendant violated the FCRA by knowingly and willfully procuring information on Plaintiff and the Class members under false pretenses. *See* 15 U.S.C. § 1681q.

85.     Defendant acted knowingly and willfully. Defendant's knowing and willful conduct is reflected by, among other things:

     a.  The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

     b.  Defendant violated a clear statutory mandate set forth in 15 U.S.C. § 1681q;

     c.  Defendant knew the difference between a hard credit inquiry and a soft credit inquiry;

     d.  Defendant knew that a hard credit inquiry reduces a consumers' credit score;

     e.  Defendant falsely represented to borrowers that it would only do a hard credit inquiry if they qualified for the offered American Express product and if they agreed to accept the offered American Express product;

f.  Despite the pellucid statutory text and their being a depth of guidance, Defendant systematically procured consumer information under false pretenses; and

g.  By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

86.    Plaintiff and the Class are entitled to actual damages, plus statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiff and the Class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).   Plaintiff and the Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT II: 15 U.S.C. §1681b(f)
## Obtaining Consumer Reports Without a Permissible Purpose

87.    Plaintiff repeats and realleges all preceding paragraphs.

88.    Plaintiff brings this claim individually and on behalf of the Class.

89.    Defendant represented to Plaintiff and the Class that it would not perform a hard inquiry into Plaintiff and the Class members' credit, unless the application was approved and the applicant elected to accept the offered American

Express product. Defendant further represented that the inquiry it would do would not affect the Class members' credit scores.

90.     Plaintiff and members of the Class did not authorize Defendant to do a hard pull of their credit reports.

91.     It was an explicit term of Plaintiff and members of the Class's interactions with Defendant that Defendant would not perform a hard pull of Plaintiff and the Class members' credit reports, unless the application was approved and the applicant elected to accept the offered American Express product.

92.     Plaintiff and members of the Class did not initiate any credit transaction because it was a material term of any transaction that Defendant would not initiate a hard pull of Plaintiff and the Damages Class members' credit reports. *See Scott v. Real Estate Fin. Grp.*, 183 F.3d 97, 99-100 (2d Cir. 1999).

93.     In light of Defendant's representations and Plaintiff's responses thereto, Defendant lacked a permissible purpose to obtain full credit reports on Plaintiff and the Class.

94.     Defendant violated the FCRA by willfully procuring consumer reports on Plaintiff and Class members without a permissible purpose.  See 15 U.S.C. § 1681b(f).

95.     Defendant acted knowingly and willfully. Defendant's knowing and willful conduct is reflected by, among other things:

a. The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

b. Defendant violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(f);

c. Defendant knew the difference between a hard credit inquiry and a soft credit inquiry;

d. Defendant knew that a hard credit inquiry reduces a consumers' credit score;

e. Defendant falsely represented to borrowers that it would only do a hard credit inquiry if they qualified for the offered American Express product and if they agreed to accept the offered American Express product;

f. Defendant knew or should have known it lacked a permissible purpose to do a hard credit pull;

g. Despite the pellucid statutory text and their being a depth of guidance, Defendant systematically procured consumer information without a permissible purpose; and

h. By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

96.     Plaintiff and the Class are entitled to actual damages, plus statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiff and the Class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).  Plaintiff and the Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

97.     Additionally, Defendant acted negligently, Plaintiff and the Class are entitled to actual damages and statutory damages pursuant to 15 U.S.C. § 1681o(a)(1). Plaintiff and the Damages Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681o(a)(2).

**COUNT III: Cal. Civil Code § 1785.19**
**Unlawfully Accessing or Obtaining Data From Consumer Files**

98.     Plaintiff repeats and realleges all preceding paragraphs.

99.     Plaintiff brings this claim individually and on behalf of the Class.

100.    Defendant falsely represented to Plaintiff and the Class that it would only do a hard credit inquiry if they qualified for the offered American Express product and if they agreed to accept the offered American Express product.

101.    Plaintiff and class members did not authorize Defendant to do a hard pull of their credit reports.

102.   It was an explicit term of Plaintiff and class members' interactions with Defendant that Defendant would not perform a hard pull of Plaintiff and the class members' credit reports.

103.   Defendant lacked any permissible purpose to obtain the credit reports under Cal. Civil Code § 1785.11.

104.   Defendant knowingly and willfully access or obtained data from the consumer files of Plaintiff and the class members in violation of Cal. Civil Code § 1785.19.

105.   Defendant acted knowingly and willfully. Defendant's knowing willful conduct is reflected by, among other things:

    a.  Cal. Civil Code § 1785.19 was enacted in 1990; Defendant has had over 20 years to become compliant;

    b.  Defendant violated a clear statutory mandate set forth in Cal. Civil Code § 1785.19;

    c.  Defendant knew the difference between a hard credit inquiry and a soft credit inquiry;

    d.  Defendant knew that a hard credit inquiry reduces a consumer's credit score;

    e.  Defendant falsely represented to prospective customers that it would not do a soft credit inquiry in order to induce prospective

customers to begin the application process while still enabling Defendant to gain access to information that would allow it to calibrate its rates based on detailed information about the consumer's credit history;

f.  Defendant falsely represented to its prospective customers that it would not do a hard credit inquiry in order to reduce its own costs in connection with procuring reports;

g.  Consumer complaints to Defendant put Defendant on notice about it lacked a permissible purpose to do a hard credit pull; and

h.  Despite the pellucid statutory text and there being a depth of guidance, Defendant systematically procured consumer information without a permissible purpose.

106.   Plaintiff and the Damages Class are entitled to civil penalties of not more than $2,500 for each and every one of these violations pursuant to Cal. Civil Code § 1785.19. Plaintiff and the Class are further entitled to actual damages and punitive damages of not less than $100 and not more than $5,000 for each violation. Plaintiff and the Class are entitled also to injunctive relief, and to recover their costs and attorneys' fees, pursuant to Cal. Civil Code § 1785.31.

## COUNT IV: Cal. Civil Code § 1785.31
## <u>Obtaining Consumer Report Under False Pretenses</u>

107.   Plaintiff repeats and realleges all preceding paragraphs.

108.   Plaintiff brings this claim individually and on behalf of the Class.

109.   Defendant obtained Plaintiff's and the Class members' credit reports under false pretenses or knowingly without a permissible purpose in violation of Cal. Civil Code § 1785.31(a)(3).

110.   Defendant's numerous representations - that it would only do a hard credit inquiry if they qualified for the offered American Express product and if they agreed to accept the offered American Express product - were false. Defendant performed a hard credit pull before the Plaintiff ever qualified for the offered American Express product, and indeed, before she was even denied.

111.   Defendant acted knowingly or recklessly. Defendant's willful conduct is reflected by, among other things:

        a.   This provision of the CCRAA was enacted in 1993; Defendant has had over 20 years to become compliant;

        b.   Defendant violated a clear statutory mandate set forth in Cal. Civil Code § 1785.31;

        c.   Defendant knew the difference between a hard credit inquiry and a soft credit inquiry;

d.  Defendant knew that a hard credit inquiry reduces a consumer's credit score;

e.  Defendant falsely represented to borrowers that it would only do a hard credit inquiry if they qualified for the offered American Express product, and if they agreed to accept the offered American Express product process, while still enabling Defendant to gain access to information that would allow it to calibrate its rates based on detailed information about the consumer's credit history;

f.  Defendant falsely represented to borrowers that it would not do a hard credit inquiry in order to reduce its own costs in connection with procuring reports;

g.  Consumer complaints to Defendant put Defendant on notice about it lacked a permissible purpose to do a hard credit pull;

h.  Despite the pellucid statutory text and there being a depth of guidance, Defendant systematically procured consumer information without a permissible purpose; and

i.  By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

112.   For these violations, Plaintiff and the Class members are entitled to actual damages and punitive damages of not less than $100 and not more than $5,000 for each and every violation. Plaintiff and the Class are further entitled to injunctive relief, and to recover their costs and attorneys' fees, pursuant to Cal. Civil Code § 1785.31.

113.   Alternatively, Defendant negligently obtained Plaintiff's and the Class members credit reports under false pretenses. For these violations, Plaintiff and the Class members actual damages, attorneys' fees, and costs.

### COUNT V: Cal. Bus. & Prof. Code § 17200
### Unlawful, Unfair, or Fraudulent Conduct

114.   Plaintiff repeats and realleges all preceding paragraphs.

115.   Plaintiff brings this claim individually and on behalf of the Class.

116.   Defendant was required to adhere to the requirements of the UCL.

117.   By making hard pulls of Plaintiff and the Class's credit reports, Defendant diminished Plaintiff's and the Class members' credit scores. *See King v. Bank of Am., N.A.*, No. C-12-04168 JCS, 2012 WL 4685993, at *8 (N.D. Cal. Oct. 1, 2012) ("Allegations of a diminished credit score have been found to satisfy the UCL's standing requirement.").

118.   Defendant's hard credit pulls constituted unlawful, unfair, and fraudulent business practices.

119.   Defendant's practices were unlawful because they violate the FCRA and/or the CCRAA.

120.   Defendant's practices were unfair because it is unethical, immoral, unscrupulous, oppressive, and substantially injurious to consumers to falsely represent that Defendant would not be performing a hard inquiry of Plaintiff's and the Class members' credit reports.

121.   Defendant's practices were fraudulent because Plaintiff and the Class were deceived and/or were likely to be deceived by Defendant's false representations that it would not do a hard inquiry into a potential borrower's credit.

122.   The harm caused by these business practices vastly outweighs any legitimate utility they possible could have.

123.   Plaintiff and members of the Class are entitled to injunctive relief and to the recovery of attorney's fees and costs.

## **PRAYER FOR RELIEF**

124.   WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for relief as follows:

    a.   Determining that this action may proceed as a class action under Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure;

    b.   Designating Plaintiff as Class Representative and

designating Plaintiff's counsel as counsel for the Class;

c. Issuing proper notice to the Classes at Defendant's expense;

d. Declaring that Defendant violated the FCRA;

e. Declaring that Defendant acted willfully, in knowing or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f. Awarding actual damages, statutory damages, and punitive damages as provided by the FCRA;

g. Awarding reasonable attorneys' fees and costs as provided by the FCRA;

h. Declaring that Defendant violated the CCRAA;

i. Awarding actual damages, punitive damages, civil penalties, costs, and attorney's fees as provided under the CCRAA;

j. Declaring that Defendant's actions violated the UCL;

k. Awarding attorney's fees and costs as provided under the UCL;

l. Awarding appropriate injunctive relief under the UCL and CCRAA, including an injunction requiring that Defendant cease its unlawful practices and ensure that

consumer reporting agencies remove Defendant's unauthorized credit inquiries from Plaintiff's and the Class members' credit reports;

m. Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

125.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Class demand a trial by jury.

Dated: September 22, 2023

MARCUS & ZELMAN, LLC


/s/ Yitzchak Zelman
Yitzchak Zelman, Esq.
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
(732) 695-3282 telephone
(732) 298-6256 facsimile
*Attorney for Plaintiff*